IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| USA-NPL, LLC, a New York Limited Liability Company, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 25-cv-01076 |
| NATIONAL PICKLEBALL LEAGUE, LLC, a Florida Limited Liability Company | )<br>)<br>)<br>)<br>) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

It's not in dispute that the phrase "National Pickleball League" is descriptive — it describes precisely what the Defendant in this case offers, that is, a national league for pickleball players. The Lanham Act does not allow entrepreneurs to seize ownership of ordinary language the moment they commence operations under a particular trade name. Rather, descriptive designations like "National Pickleball League" (and its acronym "NPL") become protectable only when they acquire a secondary meaning or "distinctiveness." At the pleading stage, a plaintiff must allege either a trademark registration or sufficient facts supporting its assertion that its use of the phrase has acquired public recognition as a source-identifying mark for the relevant goods or services. Here, Plaintiff has alleged neither.

Plaintiff's Complaint is bereft of the factual allegations to support even a borderline claim of acquired distinctiveness. Plaintiff offers no detail on when or where its supposed marks were first used, no facts about consumer surveys, sales, or media recognition, and no robust allegations of secondary meaning in the marketplace. Instead, it substitutes hollow, conclusory incantations such as "substantial investment" and "consumer recognition" for the concrete factual allegations the law demands. The Complaint also alleges that Defendant concurrently used the purported mark but leaves vague and untouched when and how Plaintiff alleges its established secondary meaning before Defendant. Such recitations of legal conclusion, devoid of any factual allegations to support those conclusions, do not meet the plausibility standard set out in *Twombly* and *Iqbal*. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014) (affirming dismissal on the basis that plaintiff "failed to allege the nature and extent of advertising and promotion or its efforts to promote a conscious connection in the public's mind, … allege[d] no facts about the extent to which the public identifies the mark with [plaintiff, and so plaintiff's] bare allegations [were] insufficient to establish that [its] mark has acquired secondary meaning.") Plaintiff's Complaint is facially implausible, and should be dismissed with prejudice on that basis.

## FACTUAL BACKGROUND

The Complaint alleges that Plaintiff USA-NPL, LLC is a New York limited liability company with its principal place of business in Greenwich, Connecticut. Compl. ¶ 2. Plaintiff asserts that it has engaged in the business of supporting, promoting, and organizing

activities related to the sport of pickleball, including tournaments, training events, and trade shows. *Id*. ¶ 8. Plaintiff further alleges that, prior to Defendant's activities, it adopted and began using the phrases "National Pickleball League" and "NPL" (the "Plaintiff's Alleged Marks") in connection with its services. *Id*. ¶ 9.

Plaintiff claims to have made "substantial investments" in advertising and promotion of services under the Plaintiff's Alleged Marks and asserts that consumers have come to associate those marks with its business. *Id*. ¶ 10. According to Plaintiff, these efforts have created valuable common-law trademark rights. *Id*. ¶ 11. The Complaint is void, however, of any hint as to where, when and how Plaintiff made investments or where, when and how consumers have come to associate the marks with its business.

Defendant National Pickleball League, LLC is a Delaware limited liability company with its principal place of business in Naples, Florida. *Id*. ¶ 3. Defendant has filed four trademark applications with the United States Patent and Trademark Office: (i) "NPL" (Serial No. 97/720,194); (ii) "NPL" with logo (Serial No. 97/720,201); (iii) "NPL Pickleball" (Serial No. 97/720,861); and (iv) "National Pickleball League" (Serial No. 98/673,378). *Id*. ¶¶ 12–15. Each application covers services in connection with organizing and conducting pickleball competitions. *Id*. ¶ 16. By the allegations of confusion (*Id*. ¶ 19) and infringement (*Id*. ¶ 22), Plaintiff admits to the concurrent use by Defendants of the National Pickleball League name without any effort to explain or separate where, when and how Plaintiff or Defendant became associated with such name in the eyes of the relevant consumers.

On April 30, 2024, Plaintiff filed a consolidated notice of opposition with the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("USPTO") challenging Defendant's applications. *Id*. ¶ 18. That proceeding remains pending. Notwithstanding the TTAB action, Plaintiff initiated this lawsuit, alleging that Defendant's marks are confusingly similar to its own and likely to cause consumer confusion. *Id*. ¶¶ 17, 19.

The Complaint asserts two causes of action. Count I alleges federal trademark infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count II seeks a declaratory judgment under 28 U.S.C. § 2201 declaring Plaintiff to be the senior user of the marks and the owner of superior rights. Compl. ¶¶ 20–28.

Plaintiff invokes this Court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338, and alleges that venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this district. *Id*. ¶¶ 4–7. The Complaint does not, however, identify any specific conduct, customers, events, or commercial presence by Defendant in Oklahoma.

## LEGAL STANDARD

A complaint is subject to dismissal under Rule 12(b)(6) when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions cast as factual allegations do not suffice. *Id*. at 678–79. Indeed, conclusory statements are not entitled to the assumption of truth and courts are free to

disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). While a plaintiff need not establish a prima facie case at the pleading stage, "the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim." *Id.* at 1192. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted).

To plead federal trademark infringement, Plaintiff must plead that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) Defendant's use of the mark to identify the goods and services causes a likelihood of confusion. 15 U.S.C. § 1114(1)(a). In relation to the first prong, generic terms can never be protected, and descriptive terms require secondary meaning to be entitled to trademark rights. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216–17 (10th Cir. 2004). Courts dismiss trademark infringement claims where the complaint pleads only conclusory assertions of distinctiveness or secondary meaning, without factual support. *See Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014) (affirming dismissal on basis of conclusory assertions of secondary meaning).

## ARGUMENT

**I.   Plaintiff Fails to Plead Ownership of a Protectable Mark**

The foundation of both of Plaintiff's claims is the bald assertion that it owns protectable trademark rights in the phrases "National Pickleball League" and "NPL." That premise is untenable. These terms are descriptive, and the Complaint is devoid of any

factual content identifying where, when, or how Plaintiff's claimed marks supposedly acquired distinctiveness sufficient to confer trademark rights. Without a protectable mark, Plaintiff cannot maintain a claim for trademark infringement under the Lanham Act or for declaratory judgment of priority.

### A. Governing Law: Distinctiveness and Secondary Meaning

The Lanham Act protects only terms capable of identifying and distinguishing one party's goods or services from those of others. Courts recognize five principal categories of terms: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (citing *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 344 (2d Cir.1999)). Generic terms are the common names of goods or services and can never function as trademarks. Descriptive terms merely describe a characteristic, function, purpose, or geographic scope of the goods or services. Descriptive terms are not inherently distinctive and are protectable only if they have acquired secondary meaning—i.e., if the primary significance of the term in the minds of consumers is the producer rather than the product. *Id*. at 1217. *See also* McCarthy on Trademarks and Unfair Competition § 15.1 ("[F]or a non-inherently distinctive designation, such as a descriptive, geographic or personal name, distinctiveness must be acquired in the marketplace in order to achieve the protectable status of a trademark or service mark.")

Secondary meaning is not presumed. While not an absolute rule, the Lanham Act provides that uncontested use of a mark for five years preceding an application for registration may be accepted as prima facie evidence of secondary meaning. See 15 U.S.C.

6

§ 1052(f). Plaintiff has not registered its purported marks nor has it filed an application for registration at the federal or state level. Absent a pleading of five years' continuous use, plaintiffs must plead secondary meaning through specific facts such as the length and manner of use, the nature and extent of advertising and promotion, efforts to create a conscious consumer association, sales success, unsolicited media coverage, and consumer surveys. *See, e.g., Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014) ("Tropic alleges that (1) it "continuously promoted" the mark "through substantial advertising and marketing and sales of its aviation and airline services"; (2) it "expended considerable time, resources, and effort in promoting" the mark; and (3) the mark "serv[es] to distinguish Plaintiff's services in the marketplace." . . . These allegations contain no factual content, "amount to nothing more than a formulaic recitation" of the final three elements of the secondary meaning test, and thus are insufficient to support a reasonable inference of secondary meaning."); *Cf. Offerup Inc. v. Ramtin Software Sols.*, LLC, No. 23-CV-6014 (RPK) (CLP), 2024 WL 4362512, at *5 (E.D.N.Y. Sept. 30, 2024) (dismissal denied because plaintiff alleged robust facts about downloads, revenue and ranking, which were sufficient to plead acquired distinctiveness for a word mark). Courts emphasize that this is an exceptional showing for highly descriptive terms; the greater the degree of descriptiveness, the greater the evidentiary burden on the user to establish secondary meaning. *McCarthy on Trademarks and Unfair Competition* §15:33. *See also Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 1368–69 (Fed. Cir. 2018); *In re Louisiana Fish Fry Products, Ltd.*, 797 F.3d 1332, 1336 (Fed. Cir. 2015); *In re Steelbuilding.com*, 415 F.3d 1293, 1300 (Fed. Cir. 2005); *In re Bongrain International (American) Corp.*, 894

F.2d 1316, 1317 n.4 (Fed. Cir. 1990). Courts regularly reject claims of acquired distinctiveness even with years of continuous use and internal testimony. *See Heritage Alliance v. American Policy Roundtable*, 133 F.4th 1063 (Fed. Cir. 2025).

Crucially, for descriptive marks, the question of prior use does not turn on a determination of the party who first used the mark, but rather, the party whose use first acquired secondary meaning. *See Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1522 (11th Cir. 1991) ("[A] business does not automatically obtain rights in a mark by using it . . . If the mark is not inherently distinctive, a business may obtain rights in the mark when it attains a secondary meaning.") (footnotes omitted); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1189 (11th Cir. 2011) ("The party seeking trademark protection must demonstrate that its mark acquired secondary meaning *before* the alleged infringer first began using the mark.") (emphasis in original).

### B. "National Pickleball League" and "NPL" Are Descriptive

The phrase "National Pickleball League" is descriptive on its face. Courts regularly classify similar composites as descriptive. The recent Federal Circuit case of *Heritage Alliance* is instructive. In *Heritage Alliance*, the opposer claimed common-law rights in the marks "iVoter Guide" and "iVoterGuide.com" for online voter-guide services beginning in about 2008. *See Heritage Alliance*, 133 F. 4th at 1065. The applicant, American Policy Roundtable, sought registration of "iVoters" and "iVoters.com" for similar services. *Id.* The TTAB dismissed the opposition because the terms were highly descriptive of the services (the prefix "i" meaning Internet, the descriptive phrase "Voter

8

Guide", and the top-level domain ".com"), and the Federal Circuit affirmed. *Id.* Here, the marks are also highly descriptive. "National" denotes geographic scope; "Pickleball" names the sport; and "League" describes an organizational structure for competitive play. Combined, the phrase tells consumers exactly what Plaintiff purports to offer: a nationwide pickleball league. That is a paradigmatic description. The acronym "NPL" is merely an abbreviation of the same descriptive phrase and remains descriptive absent independent source-identifying significance.

### C. Plaintiff Alleges No Facts Establishing Secondary Meaning

Because the designations "National Pickleball League" and "NPL" are descriptive, the law requires that Plaintiff allege facts sufficient to support an inference of secondary meaning. The Complaint fails to do so. Plaintiff asserts only that it has made "substantial investments in advertising" and that consumers "recognize" its marks. Compl. ¶ 10. These are precisely the type of conclusory allegations rejected under *Twombly* and *Iqbal*. There is no factual content regarding duration of continuous use, geographic scope of recognition, sales, consumer surveys, market share, or unsolicited media attention—facts the Tenth Circuit deems critical. *Donchez*, 392 F.3d at 1217–18; *Water Pik*, 726 F.3d at 1143–44.

In *Heritage Alliance*, the Board evaluated acquired distinctiveness and found the evidence, including five years of use plus three declarations from volunteers, was insufficient to support a finding of distinctiveness in the minds of the consuming public. *See Heritage Alliance*, 133 F. 4th at 1067. The Federal Circuit affirmed the Board's finding, holding that for a highly descriptive mark, the burden of showing secondary meaning is

elevated, and the Board did not err in declining to accept five years of continuous use as prima facie proof of distinctiveness under 15 U.S.C. § 1052(f). *Id.* at 1069.

The allegations of secondary meaning here falls short of what failed in *Heritage Alliance.* Plaintiff pleads only generic allegations of "substantial investments" and "consumer recognition" without any allegation providing any detail: no dates, no geographic markets, no volume of sales, no survey evidence, and no unsolicited media metrics. The analogy is direct and compelling: if the evidence failed in *Heritage Alliance*, Plaintiff's much thinner allegations cannot succeed.

**D. Plaintiff's Earlier Start Date Is Irrelevant**

The Federal Circuit in *Heritage Alliance* also emphasized that even an earlier start date does not automatically translate into enforceable rights if the mark remains non-protectable due to descriptiveness. *Id.* Although Heritage Alliance had used the mark for several years before the applicant, the TTAB held that evidence of such use was deemed insufficient to demonstrate that consumers had come to associate the term with a single source. The Federal Circuit affirmed, holding that five years of use, without corroborating consumer or marketplace evidence, cannot establish secondary meaning for a highly descriptive mark. *Id.* at 1069–70. Here, Plaintiff claims earlier use, but even assuming that as fact for argument's sake does not overcome the threshold requirement of distinctiveness.

Secondary meaning arises only where the consuming public associates a mark solely with one source. *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1040 (D.C. Cir. 1989). Courts uniformly hold that concurrent or widespread third-party use of a descriptive term defeats secondary meaning. *See, e.g., Globalaw Ltd. v. Carmon &*

10

*Carmon L. Offs.*, 452 F. Supp. 2d 1, 45 (D.D.C. 2006) ("Proof that others are using a term descriptively on the same or closely related goods and services is evidence tending to rebut alleged secondary meaning in a descriptive term.") (citing *McCarthy on Trademarks & Unfair Competition* § 11:25). Plaintiff alleges that Defendant has been using the term in relation to services in the same field as Plaintiff's services. Compl. ¶ 16. Thus, Plaintiff's own allegations fatally undercut any inference of distinctiveness or exclusive association. Given that Plaintiff pleads no facts explaining the onset, duration, or exclusivity of its use before Defendant's entry, its pleadings are legally insufficient to warrant a finding of secondary meaning. Plaintiff's claims fail on their face on this basis alone.

### D. Declaratory Judgment Relief is Unwarranted

Ownership of a valid mark is an essential element of both trademark infringement and declaratory judgment claims concerning priority. Where the asserted terms are descriptive and secondary meaning is neither alleged nor plausible, dismissal is required. Count I under the Lanham Act fails as a matter of law for the reasons described above. Count II, seeking a declaration of seniority, also fails because there can be no priority in an unprotectable mark.

## CONCLUSION

Plaintiff's Complaint cannot proceed. The asserted phrases "National Pickleball League" and "NPL" are descriptive, and the pleading contains no factual allegations of secondary meaning. Ownership of a protectable mark is an essential element of any Lanham Act claim, and Plaintiff has not met that threshold. This Court should dismiss the Complaint with prejudice under Rule 12(b)(6).

Respectfully submitted,

s/*Jenna B. Johnson*
Jenna B. Johnson, OBA #19198
CROWE & DUNLEVY, P.C.
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
jenna.johnson@crowedunlevy.com

**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November, 2025, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Phillip L. Free, Jr.        phil.free@okciplaw.com

s/*Jenna B. Johnson*
Jenna B. Johnson